FRANK GIORDANO ET AL. *v.* FRANK P.
GIORDANO, SR.
(12570)

Dupont, C. J., and Lavery and Landau, Js.

Argued May 25—decision released September 5, 1995

*Sara R. Martin,* for the appellant (defendant).

*Maureen M. Murphy,* with whom, on the brief, was *Janet M. Degnan,* for the appellees (plaintiffs).

DUPONT, C. J. The defendant appeals from the judgment of the trial court granting a prejudgment attachment of his real property in the amount of $225,000. The defendant claims that the attachment was improper because (1) the statute of limitations, General Statutes § 52-577d,[1] which governs civil actions for damages for injury to a minor as a result of sexual abuse, is unconstitutional, (2) General Statutes § 52-278d, as applied to defendants in tort actions, is unconstitutional, (3) the plaintiffs failed to establish damages with reasonable certainty, and (4) § 52-577d abrogates the right to present the equitable defense of laches.[2] We affirm the judgment of the trial court.

Certain facts are relevant to this appeal. The plaintiffs, Frank Giordano and Michelle Giordano, who are siblings, filed a complaint in 1993, alleging six counts

---

[1] General Statutes § 52-577d provides: "Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than seventeen years from the date such person attains the age of majority."

[2] In the defendant's brief, the laches claim is part of his constitutional claims. We, however, review this claim as a separate issue because the defendant did not cite which clause of the constitution has allegedly been violated.

of sexual molestation and emotional distress against the defendant, Frank P. Giordano, Sr., their grandfather. The alleged sexual abuse began in 1975, when the plaintiffs were five and seven years old, respectively, and allegedly ceased in 1977, when they informed their grandmother, the defendant's wife, that they were being abused. Accompanying the complaint was an application for a prejudgment remedy dated February 16, 1993, requesting that the defendant's real property be attached in the amount of $750,000. Both plaintiffs submitted affidavits in support of the application for a prejudgment remedy, listing the injuries they allegedly sustained as a result of the defendant's conduct. The defendant filed an objection to the application, challenging the constitutionality of both § 52-278d,[3] which provides for a predeprivation hearing in conjunction with an application for a prejudgment remedy, and § 52-577d, Connecticut's statute of limitations for civil actions for damages for injury to a minor as a result of sexual abuse, sexual exploitation, and sexual assault. The defendant also argued that in cases of intentional torts, it is unconstitutional to attach real property without requiring the plaintiffs to post a security bond.

Both plaintiffs testified at the predeprivation hearing. In addition, the court heard testimony from the defendant, and the defendant's son, the plaintiffs' father. Both

---

[3] General Statutes § 52-278d was amended by No. 93-431 of the 1993 Public Acts, which became effective on January 1, 1994. We will analyze the defendant's claims, therefore, under the statute as it was in 1993, when the defendant's predeprivation hearing was held.

General Statutes (Rev. to 1993) § 52-278d (a) provides: "The defendant shall have the right to appear and be heard at the hearing. The hearing shall be limited to a determination of whether or not there is probable cause to sustain the validity of the plaintiff's claim. If the court, upon consideration of the facts before it, finds that the plaintiff has shown probable cause to sustain the validity of his claim, then the prejudgment remedy applied for shall be granted as requested or as modified by the court unless the prejudgment remedy or application for such prejudgment remedy was dismissed or withdrawn pursuant to the provisions of section 52-278j."

men denied that the abuse took place. One of the plaintiffs' cousins and their stepsister also testified and claimed that the defendant had also sexually abused them when they were children. The defendant's wife was called as a witness but was unable to testify as a result of a stroke suffered three years earlier. The court also heard expert testimony from a clinical psychologist called as a witness by the plaintiffs. The psychologist had not treated the plaintiffs, but testified about the effects of childhood sexual abuse that extend into adulthood.

Both plaintiffs testified in detail about the sexual abuse they allegedly suffered as children when left in the care of the defendant. Michelle Giordano testified that as a result of the alleged sexual abuse, she had no respect for her body, was promiscuous and had suffered from anorexia and bulimia when she was a teenager. She testified, however, that she did not believe that her ability to work had been affected. Frank Giordano testified that he had experienced mental distress, anxiety and sexual difficulties as a result of the defendant's alleged actions. Both plaintiffs testified that they were then in therapy, and that Michelle Giordano had previously been in therapy with her fiance, during which some of the issues relating to her alleged sexual abuse had been discussed. Both plaintiffs expressed a desire to continue therapy, but neither indicated how much longer they believed they would need therapy.

In its memorandum of decision, filed on June 14, 1993, the trial court concluded that a full adversary hearing on the issue of probable cause provides sufficient protection from the erroneous deprivation of property and that, therefore, the further protection of a security bond was not constitutionally required in this case.[4] The court also rejected the defendant's argu-

[4] At the time of the defendant's predeprivation hearing, § 52-278d (a) made no specific reference to the providing of a security bond by the plaintiff. In

ments that § 52-577d was unconstitutional and that he had been severely prejudiced by the passage of time. The court found that both plaintiffs had established probable cause that, as a result of sexual abuse by the defendant, they had incurred and would continue to incur expenses for therapy, and that they had also suffered mental distress and anxiety for which they had demonstrated probable cause to sustain their claim for money damages. The court also found that the plaintiff Frank Giordano had established probable cause to sustain his claim for money damages for sexual difficulties that he claimed resulted from the alleged abuse. In accordance with those findings, the court ordered an attachment of the defendant's real property in the amount of $225,000.[5] Specifically, the court's order pro-

response to case law interpreting the statute as allowing the trial court the discretion to require such a bond when the facts warrant it; *Sassone* v. *Lepore*, 226 Conn. 773, 781, 629 A.2d 357 (1993); § 52-578d has since been amended to provide specifically that the requirement of a security bond is within the court's discretion. See General Statutes (Rev. to 1995) § 52-278d.

[5] The court did not award the full amount requested by the plaintiffs, stating that "[w]hile the evidence adduced establishes probable cause that they will establish liability for intentional and/or negligent infliction of emotional distress . . . the plaintiffs have not demonstrated the requisite likelihood of success on the merits of their claims that all of their many problems and deficiencies as teenagers and young adults were caused by the defendant's actions, rather than by such other causes as their mother's absence, their parents' divorce, the conduct of their stepmother, the methods of child raising favored by their father before and after he remarried, and other sad, disruptive, and troubling events in their childhoods that did not involve the defendant. The court does, however, find that [the] plaintiff Frank Giordano has established probable cause that his present sexual difficulties and flashbacks to abusive experiences are causally related to the childhood experiences at issue. . . .

"The court finds that [the] plaintiff Frank Giordano has established probable cause that, as a result of the conduct alleged, he has incurred and will incur expenses for counseling, and that he has suffered mental distress, anxiety, and sexual difficulties as to which there is probable cause of recovery of money damages.

"The court finds that Michelle Giordano has established probable cause that, as a result of the conduct alleged, she has incurred and will incur expenses for counseling, and that she has suffered mental distress and anxiety as to which there is probable cause of recovery of money damages."

vided that the plaintiff Frank Giordano was allowed an attachment of $150,000 and that Michelle Giordano was allowed an attachment of $75,000.

The defendant sought an articulation of the trial court's decision, which request was denied. The defendant did not seek a motion for review of that denial in this court. Other facts will be discussed as they pertain to each particular issue in this case.

I

CONSTITUTIONALITY OF GENERAL STATUTES
§ 52-577d

We first address the defendant's attack on the constitutionality of § 52-577d. The defendant claims that § 52-577d deprives him of his rights to equal protection and due process under both the state and federal constitutions. The defendant has not provided an independent analysis of his claims under the state constitution, and we therefore limit our review to the rights guaranteed by the federal constitution. *State* v. *Barnes*, 232 Conn. 740, 744 n.4, 657 A.2d 611 (1995).

Before we begin our analysis, we note that "[a] party who challenges the constitutionality of a statute bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Voll*, 38 Conn. App. 198, 203, 660 A.2d 358 (1995); *State* v. *Merdinger*, 37 Conn. App. 379, 382, 655 A.2d 1167 (1995). In addition to showing that § 52-577d is unconstitutional beyond a reasonable doubt, the defendant must show that " 'its effect or impact on him adversely affects a constitutionally protected right which he has.' " *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 569, 409 A.2d 1020 (1979). Finally, "[w]hile the courts may declare a statute to be unconsti-

tutional, our power to do this should 'be exercised with caution, and in no doubtful case.' " *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 316, 640 A.2d 101 (1994).

## A

### Equal Protection

The defendant claims that § 52-577d violates his right to equal protection. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); see *Franklin* v. *Berger*, 211 Conn. 591, 596, 560 A.2d 444 (1989).

Connecticut courts have held, in accordance with the federal frame of analysis, that state action concerning social and economic regulation, with some exceptions, will survive an equal protection challenge if it satisfies a rational basis test. *Daly* v. *DelPonte*, 225 Conn. 499, 513, 624 A.2d 876 (1993). The exceptions relate to state action that invidiously discriminates against a suspect class, such as the physically or mentally disabled, members of a race or gender, or state action that affects a fundamental right. When that occurs, the action passes constitutional muster only if it survives strict scrutiny. Id. If the statute does not involve fundamental rights or suspect classifications, the legislation is constitutional if any difference in treatment is rationally related to a legitimate government interest. *G.D. Searle & Co.* v. *Cohn*, 455 U.S. 404, 408, 102 S. Ct. 1137, 71 L. Ed. 2d 250 (1982); *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 578, 512 A.2d 893 (1986); *Laden* v. *Warden*, 169 Conn. 540, 542–43, 363 A.2d 1063 (1975).

The defendant does not argue that a suspect class has been created. He does argue that § 52-577d has created a special class of plaintiffs who claim damages caused by sexual abuse, sexual exploitation, or sexual assault while they were minors, and that this class unjustifiably enjoys a considerably longer statute of limitations than any other class of injured parties. The plaintiffs construe the defendant's argument to be that a class of persons, namely those accused of sexual crimes against a minor, as opposed to a class of persons who are the victims of sexual abuse, are being denied the equal protection of the law because they are subject to civil liability for a longer period of time than are most other civil defendants. Whether the class created consists of plaintiff victims or defendant abusers, we are not persuaded that § 52-577d violates the equal protection clause.

The relevant inquiry in determining whether legislation satisfies the equal protection clause of the fourteenth amendment to the United States constitution is whether the classification and the inherently disparate treatment resulting from the legislation bear a rational relationship to a legitimate state interest and are based on reasons related to the accomplishment of that goal. *Daily* v. *New Britain Machine Co.*, supra, 200 Conn. 577.

The defendant concedes that the state does have a legitimate interest in protecting and providing redress for children who are victims of sexual abuse or sexual assault, and that an extension of the normal statute of limitations for tort claims is a reasonable method of accomplishing that goal. The defendant's argument is that the present version of § 52-577d, which allows victims to bring actions until seventeen years after they reach the age of majority, has extended the statute of limitations too far to be rationally related to the state's

interest and abrogates the policy rationale of a defendant's right to repose intrinsic to all statutes of limitations.

Until 1986, civil actions for damages as a result of sexual abuse or sexual assault of a minor were governed by the general tort statute of limitations, General Statutes § 52-577, which required an action to be filed within three years of the act or omission complained of. In 1986, the legislature enacted No. 86-401, § 6, of the 1986 Public Acts, which enacted § 52-577d to create a seven year statute of limitations for sexual abuse or sexual assault of a minor.[6] The defendant argues that this seven year limitation was arbitrarily chosen by the legislature, but was nonetheless constitutional because even though it allowed a victim to bring an action after the age of majority, it still preserved the public policy of the right to repose basic to all statutes of limitations. Section 52-577d was subsequently amended by No. 91-240 of the 1991 Public Acts, which effectively extended the period of time in which to file an action to age thirty-five, regardless of when the act complained of occurred. The defendant claims that the statutory amendment is violative of the equal protection clause because the extension was arbitrary and is prejudicial to defendants because it does not relate back to the time of the discovery of the sustained injuries or "other circumscribing boundaries."

It is clear from the legislative history of § 52-577d that the purpose of the 1991 amendment was to allow victims to recall sexual abuse that had been repressed, and to bring an action against the perpetrators of that abuse as part of the victim's healing process. The defendant does

---

[6] General Statutes (Rev. to 1987) § 52-577d provides: "Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than two years from the date such person attains the age of majority, except that no such action may be brought more than seven years from the date of the act complained of."

not contest that this is a legitimate state purpose, but argues that a statute of limitations of seventeen years after the age of majority is problematic in several respects. He argues that children often misunderstand events, and the more distant in time events are, the less likely it is that they will be recalled accurately. Furthermore, the passage of time presents problems of proof for both plaintiffs and defendants. The defendant claims that the present version of § 52-577d is not sufficiently narrow to accomplish its purpose in a fair and reasonable way, and that a plaintiff's right to redress does not outweigh a defendant's right to equal protection under the law.

There are several problems with the defendant's argument. First, this legislation does not have to be narrowly tailored. As discussed previously, "[s]ocial and economic legislation will generally be held to violate the equal protection clause only if the classification drawn by the statute is not rationally related to a legitimate state interest." *State* v. *Campbell*, 224 Conn. 168, 186, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993). This general rule gives way only if "a state law affects fundamental rights guaranteed by the federal constitution, or invidiously discriminates against a suspect class, and courts will sustain such laws only if they are narrowly tailored to serve a compelling state interest." Id. The defendant has demonstrated neither the existence of a suspect class nor the abrogation of the fundamental rights guaranteed to him by the federal constitution. In fact, he does not argue that either he or the plaintiffs are members of a suspect class. Accordingly, we will review the statute of limitations at issue here under the rational basis test.

We conclude that the extended statute of limitations provided by § 52-577d, which does afford inherently disparate treatment to both plaintiffs and defendants in these types of actions as compared with plaintiffs and

defendants in other civil actions, bears a sufficiently rational relationship to a legitimate state interest and is sufficiently based on reasons related to the accomplishment of that goal to withstand constitutional scrutiny.

The legislative history of § 52-577d shows that there was extensive testimony outlining the unique position of victims of childhood sexual abuse as compared with plaintiffs in other civil actions. The testimony also recognized that the nature of the harm sustained by these victims often sublimates their memories of childhood abuse and dims their awareness of the damage until a later date.[7] "[O]ne object of § 52-577d is to afford a plaintiff sufficient time to recall and come to terms with traumatic childhood events before he or she must take action." *Roberts* v. *Caton*, 224 Conn. 483, 493, 619 A.2d 844 (1993); see also *Henderson* v. *Woolley*, 230 Conn. 472, 484–85, 644 A.2d 1303 (1994). The state has a legitimate interest both in deterring the sexual abuse of children and in providing a means for the victims of childhood sexual abuse to recall the traumatic events and understand the harm done to them before seeking redress. The extension of the statute of limitations to seventeen years after the age of majority is reasonably related to the accomplishment of those goals.

The defendant's claim, therefore, that § 52-577d is violative of the equal protection clause, fails.

## B

### Due Process

The defendant next claims that § 52-577d deprives him of due process. "The fourteenth amendment to the

---

[7] In the Senate, Senator Anthony V. Avallone remarked: "[W]e had substantial testimony before the Committee that minor victims of sexual assault often do not understand or recognize the damage which they have sustained until a substantial number of years after they attain majority. In fact, it is not just two or three years, but can be substantially longer than that. . . . So the Committee in recognition of that extends the statute of limitations on which one can bring an action." 34 S. Proc., Pt. 7, 1991 Sess., p. 2495.

United States constitution guarantees that '[n]o State shall . . . deprive any person of life, liberty or property, without due process of law . . . .' " *State* v. *Henderson*, 37 Conn. App. 733, 739, 658 A.2d 585 (1995). " 'It is fundamental that property cannot be taken without procedural due process . . . .' " *Fermont Division* v. *Smith*, 178 Conn. 393, 397, 423 A.2d 80 (1979). "Due process requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner' . . . ." Id.

The United States Supreme Court analyzes claims of procedural due process in accordance with the three part test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The Connecticut Supreme Court uses the same test. *Sassone* v. *Lepore*, 226 Conn. 773, 781, 629 A.2d 357 (1993). That test requires a consideration of "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge* supra, 334–35. "Because increased procedural safeguards in disputes between private litigants will rarely impose a substantial fiscal or administrative burden on the government, the [United States Supreme Court in *Connecticut* v. *Doehr*, 501 U.S. 1, 11, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991)] supplemented the *Mathews* test by requiring consideration as well of the interest of the party seeking the prejudgment remedy." *Sassone* v. *Lepore*, supra, 781.

The defendant's argument appears to be that the extended statute of limitations in § 52-577d is so arbitrary and capricious that he could be deprived of the necessary due process element of notice and be held liable for acts he allegedly committed many years ago. The defendant

again refers us to the statute's legislative history, presumably to demonstrate that the fact that legislators suggested different time limitations makes the final selection of seventeen years after the age of majority an arbitrary one. We disagree.

The 1991 amendment to § 52-577d is procedural, not substantive. *Roberts* v. *Caton*, supra, 224 Conn. 488. In *Roberts*, the court sustained the retroactive application of the amended § 52-577d, holding that "[t]he defendant's assertion that he is now unexpectedly exposed to liability was an express purpose of the statute. We see no injustice in retroactively applying § 52-577d as amended so as to effect that purpose." Id., 493–94. *Roberts*, therefore, is dispositive of the defendant's claim that he has been deprived of notice because he is subject to liability many years after the alleged abusive acts.

Furthermore, as the plaintiffs note, the defendant has an adequate forum in which to be heard and there are sufficient procedural safeguards to ensure that the defendant's due process rights will not be violated. The predeprivation hearing was an adversarial hearing, the defendant submitted a written objection to the plaintiffs' prejudgment remedy application, and he had the opportunity to make his argument to the court, to testify himself, and to present witnesses. Moreover, at the trial on the merits of the plaintiffs' case, at which the plaintiffs must sustain a higher burden of proof than required at the predeprivation hearing, the defendant will again have the opportunity to be heard and to present his case. We, therefore, conclude that the requirements of *Mathews* v. *Eldridge*, supra, 424 U.S. 334–35, as modified by *Connecticut* v. *Doehr*, supra, 501 U.S. 11, are satisfied.

The defendant's claim that § 52-577d is violative of his right to due process therefore fails.

## II

### IMPOSITION OF SECURITY BOND

The defendant next claims that the trial court improperly denied his request that the plaintiffs be required to post a security bond because the nature of this action presents a serious risk of erroneous deprivation of his interest in his real property. He argues that, as a matter of law, plaintiffs seeking a prejudgment remedy in intentional tort actions should be required to post a bond in order to protect a defendant's right to due process. He also argues that neither *Sassone* v. *Lepore*, supra, 226 Conn. 773, nor the 1993 amendments to the prejudgment remedy statutes are dispositive of his claim.

The defendant relies primarily on the opinion of Justices White, Marshall, Stevens, and O'Connor in *Connecticut* v. *Doehr*, supra 501 U.S. 1, as though it were the majority opinion. In *Doehr*, the United States Supreme Court held that the version of General Statutes § 52-278e in effect in 1991 was unconstitutional. That version of § 52-278e enabled courts to authorize an ex parte prejudgment attachment of real property without affording the defendant prior notice or the opportunity for a hearing, as long as the plaintiff submitted an oath that there was probable cause and a hearing was held "expeditiously" after the attachment was granted. Id., 5–6 n.1. At issue in *Doehr* was the ex parte attachment of the real property of a defendant in an assault and battery case. The assault action did not involve the defendant's real estate nor did the state have any preexisting interest in Doehr's residence or any of his other property.

In analyzing § 52-278e, the United States Supreme Court noted that "the risk of erroneous deprivation that the State permits here is substantial." Id., 12. The court also noted that "disputes between debtors and creditors more readily lend themselves to accurate ex parte assessments of the merits. Tort actions, like the assault and

battery claim at issue here, do not." Id., 17. The court concluded that "by failing to provide a preattachment hearing without at least requiring a showing of some exigent circumstance, [§ 52-278e] clearly falls short of the demands of due process." Id., 18. In response to *Doehr*, § 52-278e was accordingly amended.[8] As our Supreme Court has noted, *Doehr* "repeatedly emphasized the ex parte nature of the proceedings before it" and did not, therefore, "determine the constitutionality of a prejudgment remedy to be issued after an adversarial hearing in accordance with § 52-278d." *Calfee* v. *Usman*, 224 Conn. 29, 35, 616 A.2d 250 (1992).

The four justices in *Connecticut* v. *Doehr*, supra, 505 U.S. 18–20, who deemed "it appropriate to consider whether due process also requires the plaintiff to post a bond or other security in addition to requiring a hearing or showing of some exigency," expressed concern that "[a] defendant's property rights remain at undue risk even when there has been an adversarial hearing to determine the plaintiff's likelihood of recovery. At best, a court's initial assessment of each party's case cannot produce more than an educated prediction as to who will win. This is especially true when, [as in a tort action], the nature of the claim makes any accurate prediction elusive." They considered "the need for a bond in the case of an ex parte attachment in connection with a tort claim that they characterized as sufficiently doubtful so as to make 'any accurate prediction [of its outcome] elusive.'" *Sassone* v. *Lepore*, supra, 226 Conn. 782. The majority of the justices in *Doehr* expressed no such concern. The *Sassone* court noted the concerns of the four justices in *Doehr* and concluded that in some circumstances a security bond might be appropriate to protect

[8] The amended statute now requires, inter alia, the submission of an affidavit setting forth a statement of fact showing that there is probable cause, and the defendant is entitled to a hearing within seven business days of the filing of the application.

a defendant from an ultimate determination that the prejudgment remedy was improvidently granted. Id.

In its memorandum of decision, the trial court in this case, relying on *Shaumyan* v. *O'Neill*, 987 F.2d 122 (2d Cir. 1993), held that "a full adversary hearing on the issue of probable cause provides sufficient protection from erroneous deprivation of property and that the further protection of a bond is not constitutionally required." At issue in *Shaumyan* was a prejudgment remedy granting an attachment on a residence in a breach of contract case where a homeowner refused to pay for the installation of new windows. Id., 123. The court in *Shaumyan* discussed the concerns of the four justices in *Doehr*, and noted that because the dispute before it was not a tort action but a contract action, and the underlying facts were easily documented, there was not a risk of substantial deprivation. Id., 127. Furthermore, the *Shaumyan* court found that unlike the plaintiff in *Doehr*, the plaintiff did have a substantial preexisting interest in the attached real property. Id. The court concluded that, under those circumstances, due process did not require the plaintiff to post a security bond.[9] Id., 129.

The defendant in the present case urges this court to hold that the trial court improperly relied on *Shaumyan* in its conclusion that the plaintiffs were not required to post a security bond. The defendant argues that the trial court misread *Shaumyan* as clearly dispositive of the question of whether a bond is required in addition to a predeprivation hearing in cases where a prejudgment remedy is sought in conjunction with an intentional tort action. He cites the concerns expressed by the *Doehr*

---

[9] The *Shaumyan* court also noted that the plaintiffs could have placed a mechanic's lien on the property, which does not require the posting of a bond, and that it would be illogical to require the posting of a bond where a prejudgment remedy was sought, but not where a mechanic's lien was filed. *Shaumyan* v. *O'Neill*, supra, 987 F.2d 129.

plurality to support his argument that all plaintiffs seeking prejudgment remedies in tort actions should be required to post a security bond. The defendant claims that the trial court did not conduct the *Mathews* analysis required by *Doehr*, but rather denied his request for a bond solely on its reading of *Shaumyan*. We disagree with this characterization of the trial court's holding.

We read the trial court's citation of *Shaumyan* to support the proposition that after a careful consideration of the factors enumerated in *Mathews* v. *Eldridge*, supra, 424 U.S. 334–35, a court may determine, after a full adversary hearing, that the posting of a security bond in a particular case is not constitutionally required. We see nothing in the trial court record to support the defendant's conclusion that the court did not consider the *Mathews* factors in this case, as well as the interest of the parties seeking the prejudgment remedy. To the contrary, we read the memorandum of decision as evidencing that the court carefully considered the defendant's significant private interest in his real property, but concluded that the full adversary hearing was sufficient to protect him from an erroneous deprivation of that interest.

We now turn to the defendant's claim that neither the recent decision in *Sassone* v. *Lepore*, supra, 226 Conn. 773, nor the recently amended version of § 52-278d are dispositive of his claim that in tort actions, plaintiffs must, as a matter of law, post security bonds.

In *Sassone*, the constitutionality of the versions of §§ 52-278c and 52-278d prior to 1993[10] were challenged because they permitted a prejudgment attachment with-

---

[10] The statutes in effect at the time *Shaumyan* v. *O'Neill*, supra, 987 F.2d 122, was decided were the same as those in effect at the time that the defendant in this case had his predeprivation hearing. *Sassone* had not yet been decided at the time the trial court ordered the prejudgment remedies in this case.

out expressly requiring that the applicant post a bond or other security. *Sassone* v. *Lepore*, supra, 226 Conn. 773. The plaintiffs in *Sassone* applied for a prejudgment remedy in connection with their complaint that the defendants had breached a covenant not to compete. Without holding a hearing, the trial court denied the plaintiff's application on the ground that the absence of a bonding requirement made the prejudgment remedy statutes facially unconstitutional. Id., 775. Our Supreme Court reversed that judgment.

The *Sassone* court began its analysis with a discussion of its decision in *Calfee* v. *Usman*, supra, 224 Conn. 29, that a judicial finding of probable cause in a tort action, after an adversarial hearing pursuant to § 52-278d, provides constitutionally significant protection against an erroneous deprivation of the owner's property interests. *Sassone* v. *Lepore*, supra, 226 Conn. 781. The court "assumed there, and [continues to assume] . . . that further safeguards in [Connecticut's] prejudgment remedy statutes, if constitutionally required, would not impose administrative costs that would substantially burden the operation of government." Id. The court then determined that the focus of its inquiry would be "whether the absence of an express bonding requirement makes our prejudgment remedy statutes unconstitutional on their face because they deprive the property owner of a constitutionally mandated 'additional or substitute procedural safeguard' under the second part of the *Mathews* test." Id.

The *Sassone* court examined the facts of the case before it, and concluded that after an adversarial hearing, a trial court might properly find probable cause to sustain the plaintiff's count for breach of contract due to the defendant's failure to execute and to honor the covenant not to compete. "Taking into account the financial circumstances of the parties, and relying on the value that

the parties placed on the covenant in their purchase contract, the court might determine that an appropriately limited attachment would require no additional procedural safeguard to protect these defendants from an unconstitutional risk of injury. Finally, the court might find that the plaintiffs had a need for immediate security to protect . . . . The constitutional requirements of due process, as applied, might therefore not require the posting of a security bond if the trial court makes the appropriate factual findings. The trial court might, however, conclude to the contrary, determining that a security bond was appropriate to protect the defendants' property interest in light of all the circumstances including the plaintiffs' offer to post such a bond." Id., 783. The court then cited, as did the trial court in the present case, *Shaumyan* v. *O'Neill,* supra, 987 F.2d 122, as well as other federal cases, to support its conclusion that any due process requirement for a security bond must be assessed in light of the facts of each particular case. *Sassone* v. *Lepore,* supra, 226 Conn. 783.

The *Sassone* court also noted that the right to a prejudgment remedy of attachment is purely statutory, and that, therefore, "the authority of a trial court to require a security bond or other security for the protection of the property owner whose property is being attached is a question of statutory construction." Id., 785. The court found that the statutory authority for the posting of a security bond was found in § 52-278d (a), which at the time *Sassone* was decided, provided in relevant part: "If the court, upon consideration of the facts before it, finds that the plaintiff has shown probable cause to sustain the validity of his claim, then the prejudgment remedy applied for shall be granted as requested *or as modified by the court* . . . ." (Emphasis added.)

The court continued that "[i]n the absence of any explicit statutory limitation on the power of the trial

court to 'modify' an application for a prejudgment remedy in whatever manner the court in its discretion deems appropriate, we hold that the court's authority encompasses the power to require whatever security is constitutionally necessary. If literal construction of a statute raises serious constitutional questions, we are obligated to search for a construction that will accomplish the legislature's purpose without risking the statute's invalidity. . . . It is not an unreasonable constitutional stretch to construe 'modify' to include judicial authority that, in the appropriate circumstances, extends beyond setting the amount of the attachment and defining the property to be attached. The additional authority that we recognize today includes the court's responsibility to require the attaching party, in appropriate circumstances, to post security against undue risks from an attachment that may subsequently be found to have been wrongful." *Sassone* v. *Lepore*, supra, 226 Conn. 785–86.

The *Sassone* court then acknowledged that its decision might be criticized on the grounds of "the absence of statutory guidance about the terms or conditions for a security bond, if the trial court deems such a bond to be constitutionally required" and "the presence, in the statute as currently drafted, of a bonding option for property owners seeking relief from a previously ordered prejudgment remedy." Id., 786. The court rejected the first concern because "[t]he defendants have cited no authority for the proposition that due process requires express statutory standards to guide the exercise of judicial discretion to protect a property owner from an undue risk of erroneous deprivation of his property interest. We would be surprised to discover any such authority, because judicial discretion to protect the procedural rights of the parties is consistent with the fact-bound flexibility that inheres in due process protections." Id., 787.

The second concern noted by the *Sassone* court was that the provision in § 52-278d (c) enabling property owners to move for a stay of the attachment on the condition that the property owner post a bond with surety, precluded recourse to the court's construction of § 52-278d (a) to allow the posting of a bond by the plaintiffs. The court responded to this concern by noting that "[i]t is not inappropriate . . . to infer the existence of an additional bonding requirement that diminishes the property owner's exposure to the risk of injury from a wrongful attachment." Id., 788.

Section 52-278d was amended in 1993, apparently in response to *Sassone*. The amendment included changes in the language and also the addition of several provisions. Most relevant to the discussion here is the addition of a new subsection specifically addressing the posting of a security bond by plaintiffs in prejudgment remedy proceedings.[11]

---

[11] General Statutes § 52-278d (d) now provides in relevant part: "At any hearing on an application for a prejudgment remedy held pursuant to this section or upon motion of the defendant at any time after the granting of such application, the defendant may request that the plaintiff post a bond, with surety, in an amount determined by the court to be sufficient to reasonably protect the defendant's interest in the property that is subject to the prejudgment remedy . . . . *If* the court grants the defendant's request, the bond shall provide that if judgment in the matter is rendered for the defendant or if the prejudgment remedy is dismissed or dissolved, the plaintiff will pay to the defendant damages directly caused by the prejudgment remedy." (Emphasis added.)

Certain changes to the predeprivation hearing provided by § 52-278d (a) (4) are also relevant. That subsection now provides in relevant part: "The hearing shall be limited to a determination of (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff, (2) whether payment of any judgment that may be rendered against the defendant is adequately secured by insurance, (3) whether the property sought to be subjected to the prejudgment remedy is exempt from execution, and (4) *if the court finds that the application for the prejudgment remedy should be granted, whether the plaintiff should be required to post a bond to secure the defendant against*

The defendant is incorrect in stating that neither *Sassone* nor the amended version of § 52-278d is dispositive of his case. The defendant is bound by *Sassone*, even though that decision was released after the memorandum of decision in this case. *Sassone* concerned the interpretation of the statute *before* it contained the provisions relating to a defendant's seeking and obtaining a bond, and holds that the issue of whether additional security is required to protect the defendant property owner from erroneous deprivation of his property rights is one to be left to the court's discretion. *Sassone* v. *Lepore*, supra, 226 Conn. 785–86. The statute in this case is the same one interpreted in *Sassone*. We conclude that the holding in *Sassone* defeats the defendant's claim that the trial court here was required as a matter of law to order the plaintiffs to post a security bond.

The defendant is also incorrect in arguing that the amended version of § 52-278d, which added subsection (d), does not dispose of his claim. The defendant argues that the statute is not helpful in his case because it does not specify what circumstances the court should consider in determining whether a security bond is required. We disagree. The amendment codifies the holding in *Sassone* that the posting of a security bond by the plaintiff is a matter for the trial court's discretion. The amended statute created no new substantive rights, but merely clarified the right recognized in the previous version of § 52-278d.

In determining whether a court has abused its discretion, the ultimate question is whether the court could have reasonably concluded as it did. *Basile* v. *Basile*, 185 Conn. 141, 144, 440 A.2d 876 (1981). The trial court in the present case considered the defendant's request

*damages that may result from the prejudgment remedy or whether the defendant should be allowed to substitute a bond for the prejudgment remedy. . . ."* (Emphasis added.)

that the plaintiffs be required to post a security bond, and concluded that in this case, the full adversary hearing adequately protected the defendant's property rights, and that the risk of erroneous deprivation was not such that security for the defendant was required. On the basis of the evidence before the court at the predeprivation hearing, this was a reasonable conclusion, and we will not disturb it.

## III

## AWARD OF PREJUDGMENT REMEDY

The defendant also claims that the trial court improperly ordered an attachment of the defendant's real property because the plaintiffs did not establish the amount of their damages with reasonable certainty. The defendant does not argue that either plaintiff failed to demonstrate probable cause. The defendant, however, does argue that emotional distress damages cannot be the basis for a prejudgment remedy in the form of attachment of real property because such damages cannot be estimated with reasonable certainty, and, further, that the award of a prejudgment remedy without a reasonably certain estimate of damages violates his rights to due process. The defendant cites both the fourteenth amendment to the United States constitution, which forbids states from depriving persons of life, liberty or property without due process of law, and article first, § 8, of the Connecticut constitution, which also provides that no person shall be deprived of life, liberty or property without due process of law. Because it has been held that these provisions "have the same meaning and impose similar limitations"; (internal quotation marks omitted) *Dutch Point Credit Union, Inc.* v. *Caron Auto Works, Inc.*, 36 Conn. App. 123, 129 n.6, 648 A.2d 882 (1994); we will analyze these claims together.

In considering an application for a prejudgment remedy "[t]he trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . . The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . . [T]his weighing process applies to both legal and factual issues." (Citations omitted; internal quotation marks omitted.) *Calfee* v. *Usman*, supra, 224 Conn. 36–37. In addition, the trial court has the responsibility, after the adversarial evidentiary hearing, to consider not only the validity of the claim but also the amount that is being sought. *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 625, 594 A.2d 464 (1991).

"Appellate review of the granting of a [prejudgment remedy] is extremely narrow and focused. In determining probable cause, the trial court is vested with wide discretion and our role in reviewing the trial court's action is limited to determining whether the court's conclusion was reasonable. . . . Accordingly, the trial court's determination in a [prejudgment remedy] proceeding should not be disturbed unless it is clearly erroneous. . . . Furthermore, we are 'entitled to presume that the trial court acted properly and considered all the evidence.'" *Fischel* v. *TKPK, Ltd.*, 34 Conn. App. 22, 24–25, 640 A.2d 125 (1994). "In the absence of clear error [an appellate court] should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility . . . of the witnesses." (Internal quotation marks omitted.) Id.

The defendant argues that the granting of the prejudgment remedy was improper because the plaintiffs did not establish the amount of their damages with reasonable certainty. The defendant also intimates that any problems the plaintiffs might have suffered as a result of the alleged sexual abuse could not have been severe if they waited until 1993 to file suit. The defendant notes that neither plaintiff testified as to the amount of money spent on counseling and neither plaintiff testified as to how much longer he or she expected to be in therapy, or presented any evidence as to lost wages, physical injury, or permanent disability. The defendant argues that because the plaintiffs did not produce this evidence, they failed to establish the amount of their damages with reasonable certainty. See *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corp.*, 172 Conn. 577, 585, 376 A.2d 60 (1977). Finally, the defendant attempts to bolster this claim by noting that the trial court did not delineate what percentage of the plaintiffs' alleged damages could be attributed to any sexual abuse by the defendant, as opposed to being attributed to other traumatic incidents in their childhoods, such as their parents' divorce or abandonment by their mother.

The defendant has confused economic damages, such as claims for medical expenses, which normally require nontestimonial evidence, with noneconomic damages such as pain and suffering, which normally do not require such evidence. An award of damages for emotional distress may be valid " 'even though it is not substantially based on incurred medical expenses.' " *Berry* v. *Loiseau*, 223 Conn. 786, 811, 614 A.2d 414 (1992) "A plaintiff may recover damages in a personal injury action for pain and suffering *even when such pain and suffering is evidenced exclusively by the plaintiff's subjective complaints.* . . . [There is] no reason to subject a claim of mental suffering, which is ordinarily evidenced by subjective complaints, to stricter scrutiny or greater care

than a claim of physical suffering evidenced by the same type of complaints." (Citation omitted; emphasis added; internal quotation marks omitted.) *Buckley* v. *Lovallo*, 2 Conn. App. 579, 589, 481 A.2d 1286 (1984). Plaintiffs claiming damages as a result of emotional distress are *not* required to present expert medical testimony or psychiatric bills to substantiate their claims of noneconomic damages such as pain and suffering. *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 13, 591 A.2d 1261 (1991); see also *Berry* v. *Loiseau*, supra, 811; *Schnabel* v. *Tyler*, 32 Conn. App. 704, 717, 630 A.2d 1361 (1993), aff'd, 230 Conn. 735, 646 A.2d 152 (1994). This rule also applies to other areas of tort law where noneconomic damages are claimed. See, e.g., *Harris* v. *Forklift Systems, Inc.*, 510 U.S. 17, 22–23, 25, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (holding that in cases alleging discriminatory work environment, there "cannot be a mathematically precise test," noting in concurrence that "the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. . . . It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did . . . ." [Citation omitted; internal quotation marks omitted.] [Ginsberg, J., concurring]).

We disagree, therefore, with the defendant's claim that because noneconomic damages cannot be estimated as precisely as economic damages, prejudgment remedies are inappropriate in emotional distress cases. The defendant's case is not, as he implies, the first case where a prejudgment remedy has been awarded in a claim for noneconomic damages. The very nature of some civil claims makes the amount of a prejudgment remedy award a reasonable estimation rather than an estimation of reasonable certainty. See, e.g., *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 656 A.2d 1009 (1995) (complaint alleged, inter alia, libel, slander, unfair competition); *Sassone* v. *Lepore*, supra, 226 Conn. 773 (covenant

not to compete); *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corp.*, supra, 172 Conn. 577 (misrepresentation, false representation, breach of express and implied warranties, negligence); *Haxhi* v. *Moss*, 25 Conn. App. 16, 591 A.2d 1275 (libel, malice).

Moreover, the Connecticut Supreme Court recently addressed a claim that the probable cause standard provided by § 52-578d could not constitutionally be applied to a tort action. *Calfee* v. *Usman*, supra, 224 Conn. 30–31. The court held that the predeprivation hearing "affords the defendant the opportunity to challenge the accuracy of the factual representations and the legal contentions upon which the plaintiff relies. The fact that her claim sounds in tort rather than in contract does not leave the trial court without guidance. Probable cause is a standard widely used to validate a preliminary impairment of a broad range of personal and property rights, from the suspension of professional licenses to the issuances of warrants for seizure and arrest. The defendant has cited no case, nor has our research uncovered any, in which the Supreme Court of the United States or this court has found a probable cause standard to be unconstitutionally vague on the ground that such a standard necessarily requires an inquiry into probabilities. The validity of a probable cause standard has regularly been upheld in the criminal law context. Such impairment of civil liberty rights is undeniably more serious than the impairment of property rights arising out of an attachment." Id., 37–38.

We have carefully examined the transcripts of the adversarial hearing. The plaintiffs in this case testified in graphic detail about the sexual abuse they allegedly suffered as children and about the problems they have experienced and are continuing to experience as a result of that sexual abuse. Both plaintiffs testified to emotional injuries including anxiety, low self-esteem, and difficulty in their adult relationships. The plaintiff Frank Giordano

also testified that he experienced difficulty concentrating, episodes of nausea and sexual difficulties, and that he has in the past abused drugs and alcohol. Michelle Giordano testified that as a teenager she suffered from eating disorders. Both plaintiffs testified that they were in therapy and expected to remain in therapy.

All witnesses were sequestered during the hearing, and the plaintiffs' cousin and stepsister corroborated the testimony of the plaintiffs on very specific details. The plaintiffs' father, who is estranged from both of them, admitted that he would lose his inheritance if the defendant loses his home, refuted the plaintiffs' testimony. The defendant seemed to contradict himself at several points as to whether the plaintiffs had ever been entrusted to his care or whether he had ever been alone with either plaintiff in particular places. Finally, the plaintiffs' expert witness testified that common effects of childhood sexual abuse include low self-esteem, disassociation and difficulty concentrating, nausea, eating disorders, and drug and alcohol abuse.

The trial court specifically found that the plaintiff Frank Giordano had incurred and would continue to incur expenses for therapy, and that he had experienced mental distress, anxiety and sexual difficulties related to his alleged sexual abuse as to which there was probable cause of recovery for money damages. The trial court also specifically found that Michelle Giordano had demonstrated probable cause that she had incurred and would continue to incur expenses for counseling, and that she had suffered mental distress and anxiety as a result of the alleged sexual abuse. The trial court also found that because the plaintiffs had suffered other traumatic events as children, including abandonment by their mother and physical abuse by their stepmother, not all of the plaintiffs' difficulties as adults were necessarily a result of the alleged sexual abuse, and accordingly awarded an amount lower than that requested.

The trial court did acknowledge at the end of the parties' arguments that the task of approximating the amount of damages recoverable in a case of this nature would be difficult.[12] That is not to say, however, as the defendant contends, that the trial court's order of a pre-judgment remedy was purely speculative. In fact, we conclude that in not awarding the full amount requested, and in awarding different amounts to each plaintiff, the court carefully considered all of the evidence before it, including other factors that might account for some of the emotional difficulties testified to by the plaintiffs. Further, trial courts are experienced in assessing the amount of damages a trier of fact would award a plaintiff in various situations, based on actual jury verdicts and the trial court's knowledge of case law.

We conclude that on the basis of the testimony presented, the trial court's decision to award the prejudgment remedy in the amount of $75,000 for Michelle Giordano and $125,000 for the plaintiff Frank Giordano should not be disturbed. To reverse the granting of the prejudgment remedy in this case because the plaintiffs did not present tangible evidence as to their damages,

---

[12] The court stated: "[I]n this case, when it has [been] shown more probably than not eventually it would be held that the allegations of the complaint indeed are related to real facts, at this point I have the task not to decide the whole case, but, rather, to determine whether there is a likelihood of success on the merits, eventually, when the whole case is tried. And if so, the amount of money that needs to be held aside by an attachment, because of a possible recovery in the case.

"And that determination too is sort of a jump into the unknown, unlike cases, say, motor vehicle accidents, where somebody injures their neck or breaks their arm. This court has not seen a large number of cases involving the injuries that come from abuse. I am left thinking, what would the eventual trier think is the right amount of money without very much to guide me. And, certainly, very little has been put on other than certain costs of therapy.

"So that if I reach that issue, I hope that when you receive my decision, it is in the spirit of knowing that this is somebody's best estimate of what is likely in an area where there is not much law and in which my function is a legal function, not a psychiatric function, not a public policy function, not to make a statement of any kind."

when no such evidence will be required of them at trial; see *Delott* v. *Roraback*, 179 Conn. 406, 409, 426 A.2d 791 (1980); *LaBieniec* v. *Baker*, 11 Conn. App. 199, 204–206, 526 A.2d 1341 (1987), would be tantamount to holding the plaintiffs to a standard at the predeprivation hearing higher than that to which they will be held at trial. See *Hoke, Inc.* v. *Circuits, Inc.*, 26 Conn. App. 804, 805, 602 A.2d 1075 (1992).

Because we have concluded that the amount of a prejudgment remedy awarded for emotional distress is not necessarily speculative, and that the award in this case is a reasonable estimate of the amount of damages the plaintiffs will recover if they prevail at trial, we accordingly reject the defendant's claim that his right to due process has been violated. "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." (Internal quotation marks omitted.) *Connecticut* v. *Doehr*, supra, 501 U.S. 10. We agree with the defendant that an attachment of real property significantly affects his private interest in his real property. We conclude, however, that in the present case, the risk of an erroneous deprivation is slight. The defendant has been heard at the adversarial hearing at which the trial court reasonably found that the plaintiffs had established probable cause and the amount of the attachment ordered is a reasonable one. Moreover, we conclude that the attachment is a temporary deprivation and does not deprive the defendant of the use or possession of his property and, therefore, his right to due process has not been violated. See id., 27 (Rehnquist, C. J., concurring).

## IV

## LACHES

The defendant's final argument is that § 52-577d unfairly abrogates his right to assert the equitable defense of laches. The defendant conceded at oral argu-

ment that our Supreme Court has held that § 52-577d is procedural rather than substantive and has upheld its retroactive application. *Roberts* v. *Caton*, supra, 224 Conn. 483.[13] The defendant claims, however, that the retroactivity issue addressed in *Roberts* is not binding on the laches issue he raises here. If we assume that the defendant is correct that *Roberts* is not binding on his claim, we are nonetheless unpersuaded by the defendant's argument.

"Laches consists of an inexcusable delay which prejudices the defendant." *Danaher* v. *C. N. Flagg & Co.*, 181 Conn. 101, 107, 434 A.2d 944 (1980). "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." *Kurzatkowski* v. *Kurzatkowski*, 142 Conn. 680, 685, 116 A.2d 906 (1955). Absent prejudice to the defendant, the mere lapse of time does not constitute laches. *Emerick* v. *Emerick*, 28 Conn. App. 794, 804, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992).

The defendant urges that because the plaintiffs were aware of the alleged acts for eighteen years before they filed their action, "[t]heir neglect in asserting their rights" has severely prejudiced his case. The defendant specifically cites his wife's inability to testify on his behalf due to the stroke she suffered three years earlier. The passage of time, however, is also detrimental to the plaintiffs' preparation of their case. The defendant also claims that due to the plaintiffs' delay in filing suit, his "security in old age has been shattered." Finally, the defendant claims that § 52-577d was intended to protect victims

---

[13] The defendant notes in his brief that he does not agree with the result in *Roberts*. In a footnote, he argues that " 'there is at least one element of a substantive nature in the operation of a limitation statute, and that is the protection of potential defendants from the protracted fear of litigation.' " Quoting 51 Am. Jur. 2d, Limitation of Actions § 21 (1970). Both this court and the defendant, however, are bound by our Supreme Court's precedent.

who need a lengthy statute of limitations because they have repressed their memories of sexual abuse, and that in the present case, because the plaintiffs have never claimed that they had repressed their memories of the alleged abuse, their claim is different from those § 52-577d was intended to protect, and the defendant should, therefore, be able to assert the equitable defense of laches.[14] The defendant in effect asks that this court recognize a right to assert a laches defense in instances where the plaintiffs do not claim that they repressed their memories of the alleged sexual abuse. We decline to recognize such a right.

The defendant misunderstands the nature of a laches defense. A laches defense is not, as he asserts, a substantive right that can be asserted in both legal and equitable proceedings. "Laches is purely an equitable doctrine, is largely governed by the circumstances, and is not to be imputed to one who has brought an action at law within the statutory period." *A. Sangivanni & Sons* v. *F. M. Floryan & Co.*, 158 Conn. 467, 474, 262 A.2d 159 (1969). It is an equitable defense allowed at the discretion of the trial court *in cases brought in equity*.

There is case law where in considering whether to dismiss a complaint for laches, courts have looked by

[14] We note that the defendant has misconstrued the legislative intent behind the enactment of the 1991 amendment to § 52-577d. It is true that the statute of limitations was in large part extended due to concern for childhood victims who had repressed their memories of abuse for many years. That, however, was not the sole reason that the limitations period was extended. The legislative history indicates that there was also concern that some victims who did not have repressed memories simply would not be able to bring suit until after the age of majority because there was no next friend willing or able to file suit on the child's behalf. There was also recognition that other victims who did not have repressed memory needed to undergo therapy and emotionally heal themselves before they were able to seek redress in the courts. Testimony was also offered about victims who did not realize the extent of their psychological and emotional injuries until they were married or well into adulthood. Finally, there was a definite intent to deter sexual abuse of children. The present version of § 52-577d,

analogy to a statute of limitations. For example, in *Dunham v. Dunham*, 204 Conn. 303, 528 A.2d 1123 (1987), one brother sued another, contesting the validity of probate proceedings of their mother's will. The plaintiff brother filed an amended complaint in three counts. The first count was an equitable action to set aside the probate decree. Id., 308. The second count sounded in contract, alleging that the defendant had misrepresented the plaintiff's share of certain estate property. Id. The third count was a claim for legal malpractice, alleging that the defendant had breached a fiduciary duty to the plaintiff. Id., 308. On appeal, one of the defendant's claims was that the action on the first count, the equitable action seeking relief from a probate decree, was barred by the three year statute of limitations for tort actions because the plaintiff had prevailed at trial on the underlying claim for breach of fiduciary or confidential relationship. Id., 326.

In rejecting that argument, our Supreme Court noted that "[t]he fallacy in the defendant's argument is his assumption that a court, acting under its equitable powers, is bound to apply the statute of limitations that governs the underlying cause of action. In fact, in an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute. . . . Although *courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those time limitations.*" (Citations omitted; emphasis added.) Id., 326–27. In other words, although in equitable actions, where the defense of laches is asserted, courts may look by analogy to the statute of limitations on the underlying

therefore, was not, as the defendant posits, solely enacted to enable victims who had repressed their memories of abuse to file suit.

216

legal action, courts may not, as the defendant attempts to do here, commingle the legal concept of a statute of limitations and the equitable doctrine of laches.

The defendant's claim, therefore, that the legislature has abrogated his right to assert a defense of laches in this case, is simply incorrect. The plaintiffs' claim against the defendant sounds in tort, which is a legal, not equitable, action. Even prior to the amendment that extended the limitations period from seven to seventeen years, the defendant would not have been able to assert a laches defense against the plaintiffs because a claim for money damages for sexual abuse is not an equitable proceeding.

The granting of the prejudgment remedy is affirmed.

In this opinion the other judges concurred.