(728 P.2d 408)
No. 59,179

FLEET MAINTENANCE, INC., *Appellee*, v. BURKE ENERGY MIDWEST CORPORATION d/b/a KANSAS PROPANE, *Appellant*.

Opinion filed November 20, 1986.

*Thomas J. Lasater*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, for appellant.

*James F. Richey*, of Wichita, for appellee.

Before BRAZIL, P.J., PAUL W. CLARK, District Judge, assigned, and PAGE W. BENSON, District Judge, assigned.

BENSON, J.: The defendant, Burke Energy Midwest Corporation, d/b/a Kansas Propane, (Burke) appeals from a judgment requiring that it pay plaintiff, Fleet Maintenance, Inc., (Fleet) the full purchase price for a rebuilt engine.

On June 13, 1984, Fleet Maintenance, Inc., installed a rebuilt short block engine in a truck owned by Burke. Fleet had repaired this engine several times. Burke paid Fleet for both the engine and repairs. On February 21, 1985, the truck was towed to Fleet's garage. Initial investigation revealed an internal motor problem and after discussing the severity of the problem, Burke authorized Fleet to install a second rebuilt engine. The second engine, which was not pressure-tested prior to installation, was installed on February 21, 1985. This engine came with a standard 90-day

or 4,000-mile warranty. Burke was billed $2,650.42 for the engine.

On March 20, 1985, Burke took the truck to Fleet for a 700-mile engine check. Fleet performed certain mechanical work on the engine and billed Burke $121.43 for the engine check. After that day, Fleet did not hear anything from Burke about the engine's performance.

Pursuant to Fleet's billing procedure, it began contacting Burke in May 1985 in an attempt to determine why Burke had not paid for the second rebuilt engine or the engine check. Eventually, Fleet discovered there was a dispute regarding payment of these two invoices. On August 21, 1985, Fleet filed a Chapter 61 action against Burke seeking to recover for merchandise and services rendered. By way of answer, Burke alleged that the services and merchandise mentioned in Fleet's petition were furnished to Burke to cure completely defective merchandise originally furnished to Burke.

At trial, the transportation manager for Burke testified that Burke had many problems with the second engine from the day it was installed. Burke took it upon itself to determine how to correct the problems with the second engine. In October 1985, Burke had the second engine pulled and installed a third engine. The second engine was stripped down by Burke and tested at another place (Welborn's) where it was discovered that there were pin holes in the block which caused the problem.

The trial court granted judgment in favor of Fleet for the full purchase price of the engine and the amount of the March 1985 engine check plus interest and costs. In ruling for Fleet, the trial court found, "As a matter of law [Burke] should have given [Fleet] an opportunity to correct any fault with the engine and [Fleet] was not given that opportunity." Although the trial court does not state what law it was relying on, it may have considered K.S.A. 84-2-508(1). Burke contends that since it accepted the engine in question it was under no obligation to give Fleet an opportunity to correct the defects in the engine.

"The [seller's] right to cure or substitute for nonconforming goods arises only upon the buyer's rejection of the goods. [Citation omitted.]" *Linscott v. Smith*, 3 Kan. App. 2d 1, 4, 587 P.2d 1271 (1978). Therefore, if the buyer has accepted the goods

tendered by the seller, the seller has no right to cure. *Cf.* K.S.A. 84-2-508(1).

Here, Burke indicated its willingness to accept the engine as delivered by never notifying Fleet that it was rejecting and then appropriating the engine for its own use. Therefore, Fleet had no right to cure. However, if K.S.A. 84-2-508(1) was the basis for the trial court's decision, "[t]he judgment of [the] trial court, if correct, is to be upheld, even though the trial court may have relied upon the wrong ground or assigned an erroneous reason for its decision." *Carson v. Chevron Chemical Co.,* 6 Kan. App. 2d 776, Syl. ¶ 5, 635 P.2d 1248 (1981). Burke may be barred not by its failure to allow Fleet to cure but, rather, by its failure to notify Fleet of breach after acceptance. K.S.A. 84-2-607(3)(a). In order for the buyer to seek any of the other remedies available to him for nonconformity he must first comply with K.S.A. 84-2-607(3) which provides: "Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from *any remedy.*" (Emphasis added.)

Regardless of form, notice must be given within a reasonable time after the buyer has discovered, or should have discovered, any breach. Failure to provide a timely notice of defect bars the buyer from any remedy, including the right to revoke and the right to maintain an action for damages based on a breach of implied or expressed warranty. White and Summers, Uniform Commercial Code § 11-10, p. 421 (2d ed. 1980). In this matter, the seller brought these actions for the price of goods accepted. Buyer countered with seller's breach of an implied warranty of merchantability and buyer's revocation of acceptance. Since the seller was required to counter the buyer's allegations, notice of breach pursuant to K.S.A. 84-2-607(3)(a) is still relevant.

The record in this case reflects that Fleet was not aware of the engine's defective condition until after suit was filed. Burke's untimely notification of the breach barred it from defending Fleet's suit on the basis of a breach of warranty and revocation of acceptance.

Burke's further contention that it gave Fleet constructive notice of a defective engine by its failure to pay is without merit. Under the facts of this case, the mere failure to pay for the second engine did not provide Fleet with constructive notice that something was wrong with the engine. The key to the case at

hand is Burke's failure to comply with the clear-cut notice requirement of K.S.A. 84-2-607(3)(a).

Affirmed.