ANN DUNLEAVEY *v.* PARIS CERAMICS USA, INC.

Superior Court, Judicial District of Fairfield at Bridgeport—
File No. CV02-0395709S

Memorandum filed December 16, 2002

*Day, Berry & Howard,* for the plaintiff.

*Zeldes, Needle & Cooper,* for the defendant.

### INTRODUCTION

LEVIN, J. The principal issue raised by this application for a prejudgment remedy is whether the plaintiff wrongfully denied the defendant the opportunity to "cure" its defective performance of a contract for goods, as provided in General Statutes § 42a-2-508.[1]

The plaintiff, Anne Dunleavey, doing business as Unique Interiors, is an interior designer. The defendant, Paris Ceramics USA, Inc., is a supplier of limestone for exterior and interior use in "high end" homes. The plaintiff contracted with Terry and Nancy McClinch to renovate completely their home in Fairfield, including the swimming pool area and terrace. After consulting with the defendant, the plaintiff decided to have the McClinches' terrace paved with French Antique Bourgogne limestone. The defendant represented that this limestone was suitable for exterior use. The plaintiff

---

[1] General Statutes § 42a-2-508 provides: "(1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

"(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

purchased the stone from the defendant in June, 2001, and August, 2001, at a total cost of $124,963. She promptly resold it to the McClinches at a substantial markup, plus shipping, and the stone was installed by an independent contractor retained by the McClinches' general contractor, John Desmond.

By late October and early November, 2001, some of the stones were flaking and scaling. By January, 2002, most of the stones were breaking up. A meeting was held at the site in January, 2002, at which the plaintiff, John Abbott (the defendant's vice-president of operations), and Desmond were present. Those present agreed that the stone had to be taken up. Abbott stated at the meeting that he would do what was necessary to correct the situation.

The following day, the plaintiff wrote to Abbott, thanking him for his candor and asking for a refund "as Mr. McClinch has adjusted our payment already. ($124963.33) is the total amount due Unique Interiors." In response, the defendant wrote to the plaintiff, stating: "In the circumstances we feel we should be afforded the opportunity to right this situation by supplying suitable replacement stone.

"We greatly regret the situation at the McClinch residence, but feel it is our obligation to put this right."

When the plaintiff failed to reply, the defendant, on February 25, 2002, again wrote to the plaintiff, stating: "We remain keen to resolve this issue, and confident of the fact that we can now supply product to the site that will be suitable for the installation. We do apologize for the aggravation and inconvenience caused by the supply of the previous batch of material."

When the defendant still did not receive a response, Abbott wrote to the "McClinch Residence" in Fairfield, expressing the defendant's desire to remove and replace

the existing stone. In fact, the McClinches indicated to the plaintiff in February, 2002, that they would no longer be using her services.

The plaintiff has filed an application for a prejudgment remedy and an unsigned complaint, the allegations of which the plaintiff, in her affidavit, states are true and accurate to the best of her knowledge. The complaint is in three counts: breach of contract; breach of warranty; and fraud. The gravamen of the complaint is that the defendant did not supply French Antique Bourgogne limestone as represented.[2] On October 7, 2002, the court held a hearing on the plaintiff's application, at which both sides presented evidence and argument. The parties subsequently filed briefs.

I

General Statutes § 52-278d (a) provides in relevant part that a hearing on a prejudgment remedy "shall be limited to a determination of (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff. . . . If the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for

_____

[2] Subsequent to the hearing on the application for a prejudgment remedy, the plaintiff's attorney wrote to the court, stating that the plaintiff would be requesting that the matter be reopened and continued because of an apparent conflict of interest of the defendant's counsel. This plaintiff's attorney subsequently wrote the court, stating: "the plaintiff hereby withdraws her request to re-open the prejudgment remedy."

shall be granted as requested or as modified by the court. . . ."

"The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . . *Calfee* v. *Usman,* 244 Conn. 29, 37, 616 A.2d 250 (1992). Probable cause for purposes of the [prejudgment remedy] statutes is a flexible common sense standard that does not demand that a belief be correct or more likely true than false. *Goodwin* v. *Pratt,* 10 Conn. App. 618, 621, 524 A.2d 1168 (1987)." (Internal quotation marks omitted.) *Fischel* v. *TKPK, Ltd.,* 34 Conn. App. 22, 24, 640 A.2d 125 (1994). "In acting on a prejudgment remedy motion, the trial court must evaluate the arguments and evidence produced by both parties to determine whether there is probable cause to sustain the validity of the plaintiffs' claim. . . . [T]he trial court, vested with broad discretion, need determine only the likely success of the plaintiffs' claim by weighing probabilities. . . . *Haxhi* v. *Moss,* 25 Conn. App. 16, 18–19, 591 A.2d 1275 (1991); *E.J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 628–30, 356 A.2d 893 (1975). Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action. *One Fawcett Place Ltd. Partnership* v. *Diamandis Communications, Inc.,* 24 Conn. App. 524, 525, 589 A.2d 892 (1991)." (Internal quotation marks omitted.) *Tyler* v. *Schnabel,* 34 Conn. App. 216, 219–20, 641 A.2d 388 (1994).

Although the plaintiff has not shown probable cause that the stone provided to it by the defendant was not French Antique Bourgogne limestone, it has shown probable cause that the stone was not fit for the purpose

for which it was intended; to wit, exterior use. The plaintiff, therefore, has shown probable cause that the defendant breached its contract and its warranty to the plaintiff. See General Statutes §§ 42a-2-313 through 42a-2-315;[3] see also *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, 184 Conn. 10, 13, 441

---

[3] General Statutes § 42a-2-313, pertaining to express warranties, provides: "(1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

General Statutes § 42a-2-314, pertaining to implied warranties, provides: "(1) Unless excluded or modified as provided by section 42a-2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

"(3) Unless excluded or modified as provided by section 42a-2-316 other implied warranties may arise from course of dealing or usage of trade."

General Statutes § 42a-2-315, pertaining to implied warranties of fitness for a particular purpose, provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 42a-2-316 an implied warranty that the goods shall be fit for such purpose."

A.2d 43 (1981) ("If the buyer can demonstrate that he has been damaged by the nonconformity of the goods that he has accepted, he is entitled to recover such damages as he can prove. General Statutes §§ 42a-2-607 (3), 42a-2-714."); *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92, 95, 3 A.2d 224 (1938) (breach of warranty for particular purpose); *Acme Pump Co.* v. *National Cash Register Co.*, 32 Conn. Sup. 69, 72–73, 337 A.2d 672 (1974).

The defendant, however, contends that the plaintiff is barred from recovering damages because it refused the defendant's offer to cure the breach. Since this is a defense to the plaintiff's action for damages for breach of warranty; *Travelers Indemnity Co.* v. *MAHO Machine Tool Corp.*, 952 F.2d 26, 30 (2d Cir. 1991); 3A R. Anderson, Uniform Commercial Code (3d Ed. 1995) § 2-508:29; the court is duty bound to consider it. General Statutes § 52-278d (a); *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 795 A.2d 1274 (2002).

General Statutes § 42a-2-508, which corresponds to § 2-508 of the Uniform Commercial Code provides: "(1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

"(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender." When the seller has the right to make a curative tender and the buyer improperly refuses to accept the tender, the buyer is not entitled to damages for breach of contract or breach of warranty with respect to the goods tendered. *Travelers Indemnity Co.* v. *MAHO*

*Machine Tool Corp.*, supra, 952 F.2d 30; cf. *Plateq Corp.* v. *Machlett Laboratories, Inc.*, 189 Conn. 433, 442–43, 456 A.2d 786 (1983); 3A R. Anderson, supra, §§ 2-508:28, 2-508:29.

However, "[t]he seller's right to cure, as provided in [§ 2-508], is in terms limited to the situation where nonconforming goods have been rejected by the buyer." *Bonebrake* v. *Cox*, 499 F.2d 951, 957 (8th Cir. 1974); *Jensen* v. *Seigel Motor Homes Group*, 105 Idaho 189, 193, 668 P.2d 65 (1983); accord *Berning* v. *Drumright*, 122 Idaho 203, 208, 832 P.2d 1138 (App. 1992); *Coyle Chevrolet Co.* v. *Carrier*, 397 N.E.2d 1283, 1289 (Ind. App. 1979); *Fleet Maintenance, Inc.* v. *Burke Energy Midwest Corp.*, 11 Kan. App. 2d 523, 524–25, 728 P.2d 408 (1986); *Linscott* v. *Smith*, 3 Kan. App. 2d 1, 4, 587 P.2d 1271 (1978); *Johannsen* v. *Minnesota Valley Ford Tractor Co.*, 304 N.W.2d 654, 657 (Minn. 1981); 3A R. Anderson, supra, § 2-508:6. There is no right to cure after goods have been accepted. *Jensen* v. *Seigel Motor Homes Group*, supra, 193; *Berning* v. *Drumright*, supra, 208–209.

The defendant argues that the plaintiff, in effect, rejected the stone. The court disagrees. Although rejection is not comprehensively defined in the Uniform Commerical Code; *Ramirez* v. *Autosport*, 88 N.J. 277, 288, 440 A.2d 1345 (1982); it is inconsistent with acceptance. General Statutes § 42a-2-601 provides in pertinent part: "if the goods or other tender of delivery fail in any respect to conform to the contract, the buyer may (a) reject the whole; or (b) accept the whole; or (c) accept any commercial unit or units and reject the rest." General Statutes § 42a-2-602 (1) provides: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifes the seller." See General Statutes §§ 42a-2-606 and 42a-2-607.

"Acceptance of goods occurs when the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or (b) fails to make an effective rejection as provided by subsection (1) of section 42a-2-602, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him." General Statutes § 42a-2-606. "Acceptance of goods by the buyer precludes rejection of the goods accepted . . . ." General Statutes § 42a-2-607.

Here, the plaintiff took the goods, did not notify the defendant that it was rejecting them, paid the defendant for them, and resold them at a substantial markup to the McClinches, who then had them installed. Although use of tendered goods for a short time is not necessarily acceptance: *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 589 A.2d 337 (1991); *Contoura Business Products, Inc.* v. *TLD, Inc.*, 1 Conn. App. 690, 691, 474 A.2d 1265 (1984); here, the totality of circumstances clearly evidences acceptance. See *Quiet Automatic Burner Corp.* v. *Wetstone*, 143 Conn. 276, 279, 121 A.2d 635 (1956) (buyer's conduct, after delivery of goods, in ordering carrier to deliver goods to third party was inconsistent with seller's ownership and justified finding of acceptance to buyer); *Urbansky* v. *Kutinsky*, 86 Conn. 22, 27, 84 A. 317 (1912).

The defendant claims that the plaintiff revoked its acceptance by virtue of its intention to bring an action for damages. This contention is simply wrong. "If the buyer can demonstrate that he has been damaged by the nonconformity of the goods that *he has accepted*, he is entitled to recover such damages as he can prove.

General Statutes §§ 42a-2-607 (3), 42a-2-714." (Emphasis added.) *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, supra, 184 Conn. 13. Thus, an action for damages is a remedy of a buyer who has accepted goods. General Statutes § 42a-2-714. The court finds that the plaintiff accepted, and did not reject, the goods sold to it by the defendant.

The defendant's reliance on *Web Press Services Corp.* v. *New London Motors, Inc.*, 203 Conn. 342, 525 A.2d 57, following remand, 205 Conn. 479, 533 A.2d 1211 (1987), in support of its argument that the plaintiff rejected the goods, is misplaced. In *Web Press Services Corp.*, the defendant sold a vehicle to the plaintiff. The plaintiff paid the purchase price and took delivery. Mechanical defects developed, which the defendant several times attempted to remedy without success. Id., 343–44. The plaintiff eventually "tendered back the vehicle to the defendant and notified the defendant that it was revoking its acceptance pursuant to General Statutes § 42a-2-608." Id., 344. Here, conversely, the plaintiff did not tender back the goods she had bought nor did she notify the defendant that she was revoking her acceptance. Rather, the plaintiff resold the goods.

In its "supplemental objection," the defendant first argues that the plaintiff's "voluntarily assumed position as middleman does not obviate her obligations to [the defendant] under their sales contract." This is undoubtedly true. The fact remains, however, that the plaintiff did not reject the goods. Her resale of the goods underscores that she did not reject them. While the resale, in and of itself, may not confer additional rights under the Uniform Commercial Code on the plaintiff, neither does it confer additional rights on the defendant, nor can the court ignore the realities of the present case.

In addition, the defendant cites authority for the proposition that a seller ought to be entitled to cure a non-conforming tender even where a buyer has not rejected

the nonconforming goods. First, Connecticut appellate courts have not endorsed this view. Second, even under this liberal interpretation of U.C.C. § 2-508, which reads the word "rejection" out of the statute, the reality—the commercial reality—is that the defendant resold the goods to another party who then integrated them into his premises. The defendant does not explain adequately how the plaintiff could have mandated the McClinches to permit the defendant to affect a cure; that is, to compel the McClinches to accept and use substitute stone supplied by the defendant in the installation of another terrace. "The Uniform Commercial Code is directed toward commercial realities . . . ." *Siljeg* v. *National Bank of Commerce of Seattle*, 509 F.2d 1009, 1012 (9th Cir. 1975); accord *In re McBee*, 714 F.2d 1316, 1321 (5th Cir. 1983); *In re Yale Express System, Inc.*, 370 F.2d 433, 437–38 (2d Cir. 1966); *In re United Thrift Stores, Inc.*, 363 F.2d 11, 14 (3d Cir. 1966).

*Design Plus Store Fixtures, Inc.* v. *Citro Corp.*, 131 N.C. App. 581, 508 S.E.2d 825 (1998), on which the defendant relies, is inapposite. In the present case, unlike in *Design Plus Store Fixtures, Inc.*, the plaintiff not only accepted the goods sold to it by the defendant, but also resold those goods to a third party in a commercially reasonable manner.

The court finds that there is probable cause to believe that the plaintiff accepted the goods sold to it by the defendant, that the goods failed to conform to an implied warranty of fitness for a particular purpose, that the defendant breached its contract and its warranty to the plaintiff, that the plaintiff resold the goods to a third party in a commercially reasonable manner, and that the defendant did not have a right to cure within the ambit of § 42a-2-508.

Turning to the issue of damages, the plaintiff seeks compensation for the cost of the stone it purchased

from the defendant, the loss of its profit on its sale to the McClinches, the cost of installing the stone in the McClinches' terrace, the cost of removing that stone and certain other claimed consequential damages.

"The principal section that governs the rights of a buyer who has accepted nonconforming goods is [§] 2-714." 1 J. White & R. Summers, Uniform Commercial Code (4th Ed. 1995) § 10-1, p. 551. General Statutes § 42-2-714 provides: "(1) Where the buyer has accepted goods and given notification as provided in subsection (3) of section 42a-2-607 he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case any incidental and consequential damages under the next section may also be recovered."

The court finds that the meeting at the McClinches' residence in January, 2002, at which the defendant was present, constituted sufficient notification to the defendant pursuant to § 42a-2-607 (3).[4]

Since it was foreseeable that the plaintiff would resell the stone to another party for exterior use as a patio, and because the stone was generally useless for that purpose, the court finds that the basic measure of damages is the cost of the stone to the plaintiff, $124,963.44,

---

[4] General Statutes § 42a-2-607 (3) provides in relevant part: "Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."

less the salvage value of certain of the stone after its removal, which the court finds to be $49,000.

## II

The defendant has moved that the court order the plaintiff to file a bond in the event that the court grants the plaintiff's application for a prejudgment remedy.[5] In its motion, the defendant represents "that it has few, if any, liquid assets, and its assets are required to continue the ordinary course of its business. . . . [I]f Defendant's assets are attached or otherwise made unavailable to Defendant, it will suffer substantial harm to its business."

Section 52-278d (a) provides in relevant part: "The defendant shall have the right to appear and be heard at the [prejudgment remedy application] hearing. The hearing shall be limited to a determination of . . . if the court finds that the application for the prejudgment remedy should be granted, whether the plaintiff should be required to post a bond to secure the defendant against damages that may result from the prejudgment remedy or whether the defendant should be allowed to substitute a bond for the prejudgment remedy."

Section 52-278d (d) provides: "At any hearing on an application for a prejudgment remedy held pursuant to this section or upon motion of the defendant at any time after the granting of such application, the defendant may request that the plaintiff post a bond, with surety, in an amount determined by the court to be sufficient to reasonably protect the defendant's interest in the property that is subject to the prejudgment remedy against damages that may be caused by the prejudgment remedy. If the court grants the defendant's request, the bond shall provide that if judgment in the

---

[5] The defendant does not claim that a bond is constitutionally required. Cf. *Connecticut* v. *Doehr*, 501 U.S. 1, 18–24, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991) (plurality opinion).

matter is rendered for the defendant or if the prejudgment remedy is dismissed or dissolved, the plaintiff will pay to the defendant damages directly caused by the prejudgment remedy." Whether to order "the posting of a security bond by the plaintiff is a matter for the trial court's discretion." *Giordano* v. *Giordano*, 39 Conn. App. 183, 204, 664 A.2d 1136 (1995).

Section 52-278d (e) provides: "In determining whether to grant a request for a bond and, if granted, the amount of the bond to be set, the court shall consider the nature of the property subject to the prejudgment remedy, the methods of retention or storage of the property and the potential harm to the defendant's interest in the property that the prejudgment remedy might cause." Where a statute provides that a court "shall consider" certain enumerated factors in making a discretionary determination, such factors are generally not exhaustive. *Smith* v. *Smith*, 249 Conn. 265, 284, 752 A.2d 1023 (1999) (factors which General Statutes § 46b-82 provides that court "shall consider" are not exhaustive); *Robinson* v. *Robinson*, 187 Conn. 70, 72, 444 A.2d 234 (1982) (same regarding General Statutes § 46b-81); cf. *In re Eden F.*, 48 Conn. App. 290, 710 A.2d 771 (1998), rev'd on other grounds, 250 Conn. 674, 741 A.2d 873 (1999).

The current version of § 52-278d was enacted in 1993; Public Acts 1993, No. 93-431, § 2; against the backdrop of *Connecticut* v. *Doehr*, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), *Shaumyan* v. *O'Neill*, 987 F.2d 122 (2d Cir. 1993), and *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 594 A.2d 464 (1991).

In *Connecticut* v. *Doehr*, supra, 501 U.S. 1, a plurality of the justices of the United States Supreme Court opined that Connecticut's prejudgment remedy statute denied due process because of the absence of a bonding requirement, in an intentional tort case in which "the

nature of the claim makes any accurate prediction [of the final outcome] elusive." Id., 20. In *Shaumyan* v. *O'Neill*, supra, 987 F.2d 122, on the other hand, the Second Circuit Court of Appeals upheld a prejudgment remedy without a bond where, in a breach of contract case in which a homeowner refused to pay for the installation of new windows, "[t]he facts of the underlying claim were easily documented," and there was an "absence of a substantial risk of erroneous deprivation" of property rights. Id., 127; see id., 129. Such considerations are clearly relevant in determining whether to order a bond.

The court has thus considered the defendant's motion in light of the teachings of *Connecticut* v. *Doehr*, supra, 501 U.S. 1, and *Shaumyan* v. *O'Neill*, supra, 987 F.2d 122, *Sassone* v. *Lepore*, 226 Conn. 773, 629 A.2d 357 (1993), as well as *Giordano* v. *Giordano*, supra, 39 Conn. App. 183, although those cases were decided prior to the enactment of the 1993 revision to Connecticut's prejudgment remedy statutes, or, in the case of *Giordano*, applied the law as it existed prior to the 1993 revision. See *Giordano* v. *Giordano*, supra, 185 n.3.

## CONCLUSION

As previously discussed in part I of this memorandum of decision, the court has found that there is probable cause that the plaintiff will obtain a judgment on claims for breach of contract and breach of warranty. The proof supporting those claims is very substantial. Indeed, a good deal is undisputed. The risk of erroneous deprivation of the defendant's property is not substantial. The nature of the property that would be attached, however, is personal property of the defendant; specifically, stone, that is its stock in trade. The stone is apparently stored in a warehouse-type environment. There was no evidence that it is perishable. There is no evidence that the granting of the prejudgment remedy itself

could cause an impairment to the defendant's interest in the stone. The defendant did, however, submit evidence that if the prejudgment remedy were issued in the amount requested, the defendant would be unable to post a bond in substitution for the attachment, and might cease doing business. As a result, some individuals might lose their jobs. The defendant is wholly owned by an individual.[6]

To be sure, Connecticut courts, unaccustomed to requiring the applicant seeking a prejudgment remedy to file a bond, must become more receptive to requests that applicants for prejudgment remedies file bonds, pursuant to § 52-278d. As the *Doehr* court observed, nearly every other jurisdiction provides for the posting of such a bond, generally as a mandatory condition of obtaining a prejudgment remedy, but at least at the discretion of the court. See *Connecticut* v. *Doehr*, supra, 501 U.S. 20, 24–26. Weighing the foregoing facts, however, this court finds that the prejudgment remedy sought should issue without the plaintiff having to post a bond.

The plaintiff's application is granted in the amount of $80,000.[7]

---

[6] This individual did not testify at the hearing on the prejudgment remedy.

[7] The court has factored into the amount of the prejudgment remedy an amount of prejudgment interest that is likely to accrue during the pendency of the action and that pretrial proceedings are unlikely to be unduly protracted.