IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2025 Session

## BILLY HUGHES ET AL. v. LEE MASONRY PRODUCTS, INC. ET AL.

Appeal from the Circuit Court for Robertson County
No. 2019-CV-47     Adrienne Gilliam Fry, Judge

_____

### No. M2024-00852-COA-R3-CV

_____

The homeowners and a general contractor commenced this action for breach of contract, breach of express warranty, and breach of implied warranty against a brick manufacturer and its distributor. The trial court granted summary judgment to the defendants based on the plaintiffs' failure to provide an opportunity to cure. We affirm in part and reverse in part. Having determined that Article 2 of Tennessee's Uniform Commercial Code controls the sale of the bricks and that the bricks were accepted, it was unnecessary for the plaintiffs to provide an opportunity to cure before filing suit. Still, we conclude that the manufacturer was entitled to summary judgment on all claims because it had no privity of contract with the plaintiffs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded.**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

W. Timothy Harvey, Clarksville, Tennessee, for the appellants, Billy Hughes, Tammy Hughes, and Hughes Construction Corporation.

Owen R. Lipscomb, Brentwood, Tennessee, for the appellee, Lee Masonry Products, Inc., d/b/a Lee Brick & Block.

Jack W. Robinson, Jr., and William C. Scales, Jr., Nashville, Tennessee, for the appellees, Acme Building Brands, Inc., and Acme Brick Company.

# OPINION

## FACTS AND PROCEDURAL HISTORY

In 2017, Billy and Tammy Hughes began constructing a home on Jones Chapel Road in Cedar Hill, Tennessee. The project's general contractor was Hughes Construction Corporation, a sole proprietorship owned by Mr. Hughes.

To select bricks for the house, the Hugheses visited a showroom at Lee Masonry Products, Inc., in Hopkinsville, Kentucky. After going through Lee's sample boards and viewing the bricks on existing homes in the area, the Hughes selected a sand-faced, pink, gray, and white colorway made by Acme Brick called MonteVista. When placing his order, Mr. Hughes told the salesperson, Chris Sanders, that he wanted all the bricks to come from the same run and to be delivered to Lee Masonry's yard in one load. That way Mr. Hughes could have the same run of bricks delivered to the job site as needed.

Mr. Hughes asked for the first delivery of bricks in or around October 2017. When they arrived, Mr. Hughes visually inspected them and read the attached "brick tag." The tag identified the colorway as MonteVista and included the following notice:

### BLENDING AND CLEANING INSTRUCTIONS

Any complaint about size, color, chippage, or distortion cannot be considered after the brick are laid in the wall. Should there be any question concerning color or appearance of these brick, contact a representative of Acme Brick Company before laying.

The use of metallic brushes or certain high-pressure wash equipment may alter the appearance of brick. Acme Brick Company is not responsible for damage resulting from improper cleaning methods or materials.

### USE CONSTITUTES ACCEPTANCE

(Emphasis in original).

Mr. Hughes then authorized his mason to begin installation. However, as the bricks were laid, Plaintiffs noticed that they had an appearance different from the sample in Lee's showroom. But Mr. Hughes attributed the discrepancy to the weather, and he thought that the bricks would change appearance once they "cured."

In January 2018, Mr. Hughes asked Lee to deliver the second and final load of bricks. But the Lee salesperson, Mr. Sanders, told Mr. Hughes that delivery would take a few days because the second load of bricks was still at the Acme manufacturing facility in Alabama.

The second load of bricks arrived a week later. Like the first, the second load had a brick tag that identified the colorway as MonteVista. But Mr. Hughes immediately noticed that the second load of bricks did not have the same appearance as the first. So Mr. Hughes stopped work on the project and contacted Lee's salesperson, Mr. Sanders. After comparing the bricks, Mr. Sanders acknowledged that the bricks in the second load looked different from the bricks in the first.

Mr. Sanders then spoke with Acme's Distributor Sales Representative, Jay Pollock. Mr. Pollock then contacted Mr. Hughes and offered to see the house in person. During his visit, Mr. Pollock observed that most bricks had the proper sand facing, but he could see that some were "undercoated." Mr. Pollock said the two loads were from the same run, but he acknowledged that the loads were not shipped to Lee simultaneously. Mr. Pollock told Mr. Hughes that "use constitutes acceptance" in most cases, but he said that Acme would help find a solution to the mismatched appearance. Mr. Hughes asked if he needed to stop construction in the meantime, and Mr. Pollock said no. So Mr. Hughes authorized his mason to use the second load of bricks.

After discussing possible remedies with Mr. Hughes and Mr. Sanders, Mr. Pollock obtained authorization from Acme to hire Spencer Porter of Tennessee Brick Stainers to stain the bricks. Acme paid Mr. Porter $1,000 to order a custom stain; however, by the time Mr. Porter was ready to begin, Mr. Hughes had decided against staining the bricks. Mr. Hughes wasn't convinced that the stain would work, and he was worried that it would fade. So Mr. Hughes hired a pressure washing company to remove the coating on all the bricks. This resulted in a consistent appearance, but the bricks no longer had the sand coating that the Hugheses wanted.

In February 2019, the Hugheses and Hughes Construction Corporation (collectively, "Plaintiffs") commenced this action by filing a complaint against Lee Masonry and Acme Brick (collectively, "Defendants"). Plaintiffs alleged that Defendants breached the sales contract by providing nonconforming goods and that Defendants violated the Tennessee Consumer Protection Act of 1977 ("the TCPA"), Tenn. Code Ann. § 47-18-104 to -138, by misrepresenting that the bricks were of a particular standard, quality, grade, style, or model. In response, Lee and Acme denied that they provided nonconforming goods, and they asserted several affirmative defenses. After that, the case lay dormant for nearly four years.

In February 2023, the trial court entered an agreed scheduling order. Plaintiffs then notified Acme of their intent to take the deposition of Acme's corporate representatives. Plaintiffs identified eight topics for the examination, including Acme's "[b]asic ownership information, and corporate and personnel structure." In response, Acme named Mr. Pollock and another Acme employee as its representatives for the purpose of addressing the first seven topics. Acme did not, however, designate a representative to answer questions regarding the company's ownership and corporate structure. Acme averred this topic was

"not relevant to any of the parties' claims or defenses in this matter" and was "not reasonably calculated to lead to the discovery of admissible information."

Still, during Mr. Pollock's examination, Plaintiffs asked if he could testify on Acme's ownership and corporate structure. But before Mr. Pollock could answer, Acme's counsel interjected, saying he didn't think the information was relevant. Plaintiffs' counsel explained that he wanted to know "who supervises what" and what their job duties and titles were. When Plaintiffs' counsel asked Mr. Pollock whether he would answer the question, Acme's counsel interrupted again to say he would not.

Continuing with the examination, Plaintiffs' counsel asked Mr. Pollock whether he reviewed any documents to prepare for the deposition. Mr. Pollock said he reviewed a document that had a summary of his text messages, phone calls, and personal notes from 2017 and 2018. Mr. Pollock said that he wrote the summary in 2018 after Plaintiffs filed their lawsuit. But Mr. Pollock said that he threw away the originals and that his text messages were lost when Acme replaced his phone.

After deposing Mr. Pollock, Plaintiffs filed a motion to "withdraw" their TCPA claims. But before that motion was heard, Acme moved for summary judgment on all claims, and Lee Masonry moved for partial summary judgment on the TCPA claim. In its motion, Acme argued that it was entitled to judgment for four reasons:

> (1) Plaintiffs do not have a contract with Acme for the brick at issue in this case; (2) Acme did not provide Plaintiffs with implied warranties or express warranties; (3) the economic loss doctrine bars Plaintiffs' claims against Acme; and (4) Plaintiffs claims against Acme and Lee Masonry Products, Inc. d/b/a Lee Brick & Block are barred because they did not give either defendant an opportunity to cure the alleged defects at issue in this case.

For its part, Lee Masonry argued that it was entitled to summary judgment on Plaintiffs' TCPA claim because there was no evidence that it acted deceptively regarding the sale of the bricks.

In response, Plaintiffs argued, *inter alia*, that there was an issue of material fact on whether Plaintiffs gave Acme an opportunity to cure because Mr. Hughes discussed potential remedies with Mr. Pollock in early 2018. Plaintiffs also claimed that Acme's proposed solution of staining the bricks was not "reasonably acceptable" because the stain would have produced "a different kind or quality of brick, and appearance which would have altered the majority of the brick present." And Plaintiffs argued that Lee Masonry's motion was moot due to Plaintiffs' withdrawal of the TCPA claim.

After a hearing in February 2024, the trial court granted Plaintiffs' motion to "withdraw" the TCPA claim and entered a memorandum opinion on the pending motions for summary judgment. Even though Lee Masonry had not moved for judgment on the

breach of contract and warranty claims, the trial court held that both Acme and Lee were entitled to judgment on all claims because Plaintiffs did not give Acme and Lee an opportunity to cure. For completeness, the trial court went on to note that summary judgment would otherwise not be warranted because there were genuine issues of fact that were material to Plaintiffs' contract and warranty claims.

Meanwhile, Plaintiffs moved for sanctions against Acme for instructing Mr. Pollock not to answer questions at his deposition and for Mr. Pollock's destruction of evidence. Plaintiffs asked for an award of costs and fees and for permission to present evidence of spoliation at trial. The trial court granted the motion in part, awarding $1,000 "for Spoliation of Evidence."

Plaintiffs then filed a motion to alter or amend under Tennessee Rule of Civil Procedure 59.04, which the trial court denied. This appeal followed.

## ISSUES[1]

Plaintiffs raise two issues on appeal:

(1)    Whether the trial court erred in granting summary judgment to Defendants based on Plaintiffs' alleged failure to provide an opportunity to cure; and

(2)    Whether the trial court erred in denying sanctions against Acme for refusing to answer questions during depositions of corporate representatives under Tennessee Rule of Civil Procedure Rule 30.02.

Acme and Lee contend that the trial court's decision was correct. In the alternative, Acme raises three issues:

(1)    Whether the trial court erred in finding a genuine issue of material fact as to whether Plaintiffs had a contract with Acme.

---

[1] In their Reply Brief, Plaintiffs argue for the first time that the trial court erred in granting summary judgment *sue sponte* to Lee. It is well settled that raising new arguments in a reply brief is "fundamentally unfair" to the appellee and, therefore, such arguments will be considered waived. *See Hughes v. Tennessee Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) ("We also note that petitioner only fully asserts and briefs this claim in his reply brief. . . . Therefore, petitioner's argument . . . is waived"); *Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991) (observing that letting an appellant include a new argument in a reply brief "would be fundamentally unfair as the appellee may not respond to a reply brief").

(2)     Whether the trial court erred in finding a genuine issue of material fact as to whether Acme provided Plaintiffs with implied or express warranties.

(3)     Whether the trial court erred in finding a genuine issue of material fact as to whether the economic loss doctrine bars Plaintiffs' claims.

## STANDARD OF REVIEW

We review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). We review a trial court's decision to grant or deny a motion for sanctions under an abuse of discretion standard. *Caldwell v. Ruby Falls, LLC*, 674 S.W.3d 899, 908 (Tenn. Ct. App. 2023) (citing *Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004)).

## ANALYSIS

### I. MOTION FOR SUMMARY JUDGMENT

### A. Opportunity to Cure

Plaintiffs contend that the trial court erred by granting summary judgment to Defendants because there was a genuine issue of material fact as to whether Plaintiffs gave Defendants an opportunity to cure.

We have determined that Plaintiffs were not obligated to provide an opportunity to cure because the parties' contract was governed by Tennessee's Uniform Commercial Code ("the UCC"), which does not require a buyer who has accepted goods to give the seller an opportunity to cure.

The UCC governs "[i]f the predominant assets to be transferred are goods." *Hudson v. Town & Country True Value Hardware, Inc.*, 666 S.W.2d 51, 53 (Tenn. 1984). Moreover, in the absence of a specific provision in the UCC providing otherwise, the statute "preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies." Tenn. Code Ann. § 47-1-103 cmt. 2. Thus, when the UCC applies, "any argument implicating common-law contract principles is inapplicable." *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 805 (Tenn. Ct. App. 2012).

Here, Plaintiffs had a contract with Defendants for the sale of bricks; thus, the UCC governs the contract. *See Big Creek Landscaping, LLC v. Hudson Const. Co.*, No. M2006-01657-COA-R3-CV, 2007 WL 3072773, at *10 (Tenn. Ct. App. Oct. 22, 2007) (holding that the UCC's provisions regarding notice and opportunity to cure applied to contract dispute between contractor and subcontractor when contract was for the sale of trees).

Under Article 2 of the UCC, "[a] right to cure is relevant only when a buyer has rejected the goods prior to formal acceptance and the UCC does not allow a seller the right to cure following the buyer's acceptance." *O'Bryant v. Reeder Chevrolet Co.*, No. 03A01-9810-CV-00325, 1999 WL 233440, at \*2 (Tenn. Ct. App. Apr. 15, 1999) (citations omitted); *accord Vanalt Elec. Const. Inc. v. Selco Mfg. Corp.*, 233 F. App'x 105, 110 (3d Cir. 2007); *Bonebrake v. Cox*, 499 F.2d 951, 957 (8th Cir. 1974); *Dunleavey v. Paris Ceramics USA, Inc.*, 819 A.2d 945, 950 (Conn. Super. Ct. 2002); *Great W. Press, Inc. v. Atlanta Film Converting Co.*, 479 S.E.2d 143, 145 (Ga. Ct. App. 1996); *Jensen v. Seigel Mobile Homes Grp.*, 668 P.2d 65, 69 (Idaho 1983); *Coyle Chevrolet Co. v. Carrier*, 397 N.E.2d 1283, 1289 (Ind. Ct. App. 1979); *Linscott v. Smith*, 587 P.2d 1271, 1273 (Kan. Ct. App. 1978); *Berman & Sons, Inc. v. Jefferson*, 396 N.E.2d 981, 986 n.11 (Mass. 1979); *Equistar Chemicals, LP v. ClydeUnion DB, Ltd.*, 579 S.W.3d 505, 519 (Tex. App. 2019); *see also* 4 Anderson U.C.C. § 2-607:11 (3d. ed.) ("The curative tender provision applies only when the buyer rejects the goods as nonconforming."); 18 Williston on Contracts § 52:24 (4th ed.) ("[T]he buyer's refusal to allow the seller to cure [after acceptance] does not in any way diminish the buyer's right of recovery."); 1 Hawkland's Uniform Commercial Code Series § 2-508:1 (Dec. 2025 Update) (noting that UCC "does not give the seller a right to cure if the buyer has not rejected the seller's tender").

The UCC states that acceptance of goods may occur in three ways:

(1)   Acceptance of goods occurs when the buyer:

    (a)   after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

    (b)   fails to make an effective rejection (§ 47-2-602(1)), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

    (c)   does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

Tenn. Code Ann. § 47-2-606. Here, Plaintiffs signified their acceptance of the bricks and acted inconsistently with Defendants' ownership by installing the bricks on the house despite the bricks' nonconforming appearance. *See Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 176 (Tenn. Ct. App. 2001) (holding that buyer accepted goods by using them in the construction of a bridge), *abrogated on other grounds by Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016). Thus, Plaintiffs were not required to give Defendants an opportunity to cure. *See O'Bryant*, 1999 WL 233440, at \*2.

Therefore, neither defendant was entitled to summary judgment based on Plaintiffs' failure to give Defendants an opportunity to cure. Because this was the only basis for granting summary judgment to Lee Masonry, we vacate the judgment in its favor and remand with instructions to reinstate Plaintiffs' breach of contract and warranty claims against Lee Masonry.

### B. Breach of Contract Claim Against ACME

Even if Plaintiffs weren't required to give Acme an opportunity to cure, Acme asserts that summary judgment on the breach of contract claim was warranted because there was no evidence that Acme had an enforceable contract with Plaintiffs. We agree.

A claimant must prove the existence of an enforceable contract to maintain an action for breach of contract. *See Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019) ("[T]o make a prima facie case for a breach of contract claim, a plaintiff must allege," *inter alia*, "the existence of an enforceable contract" (citations omitted)). "[A] contract can be expressed, implied, written, or oral, but an enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced." *In re Est. of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006) (quoting *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990)).

Here, Mr. Hughes admitted during his deposition that he never received, let alone executed, a written contract from Acme. Moreover, Mr. Hughes testified that he had no communication with Acme until after he received the bricks from Lee. Thus, there is no evidence of a written or oral contract with ACME.

Still, Plaintiffs argue in their brief that there was an issue of fact as to whether a contract existed:

> [T]here are sufficient material facts established as to the relationship between Defendants LEE MASONRY and ACME such that ACME was the entity the Plaintiff was actually dealing with and LEE MASONRY was a subterfuge or conduit by which ACME was attempting to avoid liability. Those facts are significant. LEE MASONRY describes itself as the ACME distributor. The brick samples were from ACME. When issues with the brick became apparent, LEE MASONRY served as the client contact with ACME but asserted the remedy or cure w[as] between ACME and HUGHES.
>
> The brick sample board was from ACME and referenced ACME. HUGHES was aware and intended to purchase ACME brick. There were representations from ACME on the brick samples reviewed by HUGHES at the time of purchase. The brick card which accompanied delivery of the brick advised the purchaser to contact the "Acme Brick Company representative"

and therefore referencing a privity relationship between HUGHES and ACME.

> LEE BRICK's conduct also supports privity of contract between HUGHES and ACME. LEE BRICK describes itself as just the distributor for ACME and any dispute regarding the brick was between ACME and HUGHES. . . . LEE BRICK asserted the solution to correct the defective brick was the responsibility of ACME, not LEE BRICK.

(Citations omitted).

Plaintiffs do not, however, cite any authority to support an argument under which the foregoing facts would establish privity of contract with Acme.[2] Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure requires appellants to include an argument setting forth "with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." Tenn. R. App. P. 27(a)(7). "The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400–01 (Tenn. Ct. App. 2006) (citations omitted).

For these reasons, we respectfully disagree with the trial court's finding that there was a genuine issue of material fact as to whether Plaintiffs had privity of contract with Acme. Accordingly, we reverse the denial of summary judgment on Plaintiffs' breach of contract claim and remand with instructions to summarily dismiss Plaintiffs' breach of contract claim against Acme.

### C. Warranty Claims Against Acme

Next, Acme asserts that the trial court erred by denying its Motion for Summary Judgment on Plaintiffs' express and implied warranty claims because, *inter alia*, the claims are barred by the economic loss doctrine. We agree.

As we have explained,

> The economic loss doctrine provides that "[i]n a contract for the sale of goods where the only damages alleged come under the heading of economic losses, the rights and obligations of the buyer and seller are governed exclusively by the contract." Consequently, a plaintiff may not maintain a claim for purely

---

[2] To the extent that Plaintiffs are attempting to rely on a theory of vicarious liability, we find that issue waived because Plaintiffs did not raise it in the trial court. *See Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court.").

economic losses absent contractual privity with the party charged with responsibility for those losses.

*Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) (quoting *Trinity Indus., Inc.*, 77 S.W.3d at 171). Thus, "Tennessee law does not allow recovery of economic losses under a breach of warranty theory absent privity." *Id.* at 473.

Still, Plaintiffs point out that privity of contract is not required under Tennessee Code Annotated § 29-34-104, which provides: "In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the Uniform Commercial Code, compiled in title 47, chapters 1–9, privity shall not be a requirement to maintain such action." Tenn. Code Ann. § 29-34-104. That statute, however, removes the privity requirement for **only** actions involving personal injury or property damage. *See Messer Griesheim Indus.*, 131 S.W.3d at 463–65. Plaintiffs have not alleged either.

We have already held that Plaintiffs did not produce evidence from which a jury could find privity of contract with Acme. For this reason, we conclude that the economic loss doctrine bars Plaintiffs' warranty claims against Acme. Thus, we reverse the trial court's denial of Acme's Motion for Summary Judgment on these claims and remand with instructions to summarily dismiss Plaintiffs' warranty claims against Acme.

## II. MOTION FOR SANCTIONS

Plaintiffs contend that the trial court abused its discretion by not sanctioning Acme for instructing Mr. Pollock not to answer a question about Acme's ownership and corporate structure.[3]

Under Tennessee Rule of Civil Procedure 30.03, "[a] deponent may be instructed not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion to terminate or limit examination." An accompanying Advisory Commission Comment explains that "'instructions' to a deponent not to answer a deposition question are made not only without authority but are unethical and sanctionable." Tenn. R. Civ. P. 30.03 advisory committee's comment to 1995 amendment.

None of the listed exceptions are relevant to the question at hand. Thus, Acme's counsel violated Rule 30.03 by instructing Mr. Pollock not to answer Plaintiffs' question.

---

[3] Plaintiffs also contend that additional sanctions were warranted for Mr. Pollock's destruction of evidence "should this Court revise the Trial Court's grant of summary judgment to ACME." We pretermit this issue because we have affirmed the summary dismissal of all of Plaintiffs' claims against ACME.

- 10 -

*In re Foreign Ct. Subpoena*, No. M2011-01718-COA-R3-CV, 2012 WL 2126960, at *1 (Tenn. Ct. App. June 12, 2012) (affirming sanction when deponent's attorney "instructed his client not to answer"). Thus, the trial court could have imposed sanctions in this case. But the fact that a trial court **may** impose sanctions "does not mean that it must do so." *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981).

Prior to the deposition, Plaintiff served a request pursuant to Rule 30.02(6) for Acme to designate corporate representatives authorized to answer questions related to eight topics.[4] Acme identified a representative who could testify on seven of the eight topics, but refused to designate a representative to testify concerning Topic Eight, which dealt with the identity of the person at Acme who could grant authority "to act on policies related to defects and curing and who has authority to bind Acme." Acme insisted that the information was not relevant and was not likely to lead to the discovery of admissible evidence. Thus, Plaintiffs were on notice prior to taking the deposition of Acme representatives that Acme objected to this line of questioning. Furthermore, the trial court summarily dismissed all of Plaintiffs' claims against Acme without needing to rule on the relevance of this line of questioning. Thus, it is implicit in the trial court's ruling that this line of questions was not likely to lead to the discovery of evidence that was material to the issues decided by the trial court on summary judgment.

We review a court's decision to grant or deny a motion for sanctions under an abuse of discretion standard. *See Caldwell*, 674 S.W.3d at 917. "Abuse of discretion occurs only when 'the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence.' Appellate courts should allow discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness." *Griffith Servs. Drilling, LLC v. Arrow Gas & Oil, Inc.*, 448 S.W.3d 376, 379 (Tenn. Ct. App. 2014) (citations omitted) (quoting *Cincinnati Ins. Co. v.*

---

[4] Tennessee Rule of Civil Procedure 30.02(6) reads:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a nonparty organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (6) does not preclude taking a deposition by any other procedure authorized in these rules.

*Mid-S. Drillers Supply, Inc.*, No. M2007-00024-COA-R3-CV, 2008 WL 220287, at \*3–4 (Tenn. Ct. App. Jan. 25, 2008)).

Having considered the issue, we find that reasonable minds could differ concerning the soundness of the trial court's decision not to impose a sanction for the action of Acme's counsel. Because reasonable minds could differ concerning its soundness, we affirm the trial court's decision. *See Griffith Servs. Drilling*, *LLC*, 448 S.W.3d at 379.

### IN CONCLUSION

Based on the foregoing, we reverse the summary dismissal of Plaintiff's claims against Lee Masonry, affirm the summary dismissal of all claims against Acme, albeit on different grounds,[5] and affirm the denial of Rule 30.03 sanctions against Acme. This matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellants, Billy Hughes, Tammy Hughes, and the Hughes Construction Corporation.

_____

FRANK G. CLEMENT JR., P.J., M.S.

---

[5] The appellate court may affirm the entry of summary judgment on grounds that differ from those forming the basis of the trial court's decision. *Bobo v. City of Jackson*, 511 S.W.3d 14, 26 n.14 (Tenn. Ct. App. 2015) (citations omitted).